JUNCTION 615, INC., Appellant,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellee.

[Cite as *Junction 615, Inc. v. Ohio Liquor Control Comm.* (1999), 135 Ohio App.3d 33.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 98–L–121 and 98–L–123.

Decided Sept. 30, 1999.

*Richard J. Perez,* for appellant.

*Betty D. Montgomery,* Attorney General, and *David A. Raber,* Assistant Attorney General, for appellee.

NADER, Judge.

Appellant, Junction 615, Inc., appeals the Lake County Court of Common Pleas judgment denying its administrative appeal from the ruling of appellee, Ohio Liquor Control Commission ("the commission").

Junction 615, according to appellant's brief, "is similar to many of the upscale gentlemen's clubs that are becoming so popular today. It employs dancers who perform sophisticated dance routines for the patrons." On two occasions, the commission sent agents to Junction 615 to determine whether the "sophisticated dance routines" were in violation of former Ohio Adm.Code 4301:1–1–52 ("Rule 52"), which prohibited "lewd, immoral activities" and "improper conduct" in liquor establishments.

On Saturday, March 9, 1997, Agents Patrick Sheehan and Eric Wolfe went to Junction 615 to investigate a complaint. While at the establishment, the agents observed the dance routine of Lisa E. Mackel. Mackel's routine consisted of her straddling herself across the laps of numerous unidentified male patrons, thrusting her hips into their groin areas, and then placing her breasts around their faces while allowing them to caress her thighs and buttocks. She performed this sophisticated routine while dressed in high-heel shoes, a shear, black T-bottom (also referred to as a "G-string"), and a black mesh bra. At the end of her routine, she allowed each patron to place a monetary tip in the left leg of her G-string. After observing the routine from the bar area for a few minutes, Agent Sheehan positioned himself at a seat near the dance floor to get a better look. Eventually, Mackel approached Agent Sheehan and placed her head in his groin area and started to quickly move her head up and down, which, in the agents' estimation, was done to simulate oral sex. Before issuing a citation to the club, Agent Sheehan also allowed her to straddle his lap, thrust her hips into his groin area, and place her breasts in his face and knock his head back and forth with them. The agents issued a citation to the club for "[a]llowing improper conduct (dancer having physical contact with the patron)." After a hearing, the commission ruled that appellant had violated Rule 52 and assessed it a fine of $700, or allowed it to have its liquor license suspended for seven days, in lieu of the fine.

On Saturday, August 16, 1997, Agents James G. Eliason and Kevin Piazza went to Junction 615 to investigate a complaint. After ordering drinks, the agents observed the dance routines of Eva E. Hails and Dawn M. Britsky. Agent Eliason observed Hails's stage performance from a seat next to the stage. Hails's routine consisted of her placing her legs around his head and pulling it into her groin area for a few seconds, straddling his lap and "grind[ing] her groin area in [his] lap," and placing her breasts in his face, while dressed in a one-piece bathing suit. She also performed this routine for other unidentified patrons seated in the vicinity of the stage. After observing Hails's routine, but before issuing the club a citation, Agent Eliason proceeded to the bar where he and Agent Piazza observed more dance routines. One of these routines included that of Dawn M. Britsky, who performed a private dance for a patron in a corner of the bar, while dressed in a bikini. Her routine consisted of rubbing her buttocks in the patron's chest, straddling his lap, and rubbing her breasts in his face. All of this activity was done in full view of a barmaid and the club's doorman. The agents issued a citation to the club for "[a]llowing improper conduct (go-go dancers having physical contact with the patrons)." After a hearing, the commission ruled that appellant had violated Rule 52 and assessed it a fine of $2,800, or allowed it to have its liquor license suspended for fourteen days, in lieu of the fine.

Appellant did not dispute the agents' versions of the facts at either of the hearings before the commission. Appellant appealed the commission's decisions to the court of common pleas. The cases were consolidated for purposes of appeal. Appellant argued that the commission's findings were not supported by reliable, probative, and substantial evidence, that the commission abused its discretion, that it did not violate Rule 52, that Rule 52 was unconstitutionally overbroad, and that Rule 52 violated its right to due process and equal protection under the Ohio and United States Constitutions. On May 29, 1998, the trial court affirmed the rulings of the commission. In its judgment entry, the court ruled that the commission's decisions were supported by reliable, probative, and substantial evidence. The trial court further determined that Rule 52 was constitutional, notwithstanding the decision cited by appellant, holding Rule 52 unconstitutional. See *Cleveland's PM on the Boardwalk, Ltd. v. Ohio Liquor Control Comm.* (Jan. 23, 1997), Cuyahoga App. No. 69779, unreported, 1997 WL 25522.

Appellant raises the following assignments of error:

"[1] The trial court erred in affirming the Ohio Liquor Control Commission's decision[s] due to the fact that Ohio Administrative Code 4301:1–1–52 is unconstitutionally overbroad under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Ohio Constitution.

"[2] The decision below must be reversed because Rule 52 is unconstitutional under the Due Process Clause of Article [I], Sections 16 and 19 of the Ohio Constitution because it is unconstitutionally vague.

"[3] Rule 52 violates the Equal Protection Clause of the United States Constitution and Article [I], Section 2 of the Ohio Constitution."

At the time of the within violations, Rule 52 read as follows:

"No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances, lewd, immoral activities or brawls; or any indecent, profane or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

"Entertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited. Nor shall any permit holder, his agent, or employee possess or cause to have printed or distributed any lewd, immoral, indecent, or obscene literature, pictures or advertising material."

In addition to the holding by Ohio's Eighth Appellate District in *Cleveland's PM,* the federal district court in Ohio's Northern District also has held that former Rule 52 was unconstitutional. See *J.L. Spoons, Inc. v. Brunswick* (N.D.Ohio 1998), 18 F.Supp.2d 775.

The Ohio Supreme Court determined that a conflict existed between the holding of the Eighth District in *Cleveland's PM* and the holding of the Tenth District in *Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm.* (1998), 125 Ohio App.3d 619, 709 N.E.2d 220. Thus, it took up review of the question " ' "[w]hether the prohibition against semi-nude dancing in liquor establishments, enforced under Ohio Adm.Code 4301:1–1–52, unconstitutionally abridges the right of freedom of speech in violation of the First Amendment to the United States Constitution and Section 11, Article I, Ohio Constitution." ' " *Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm.* (1998), 82 Ohio St.3d 1432, 694 N.E.2d 981.

On December 10, 1998, the Liquor Control Commission, presumably in response to the adverse court rulings, amended the current version of Rule 52. It now defines "lewd activities" as "those activities * * * that contain lustful, lascivious or lecherous behavior and includes, but is not limited to acts of, or acts that simulate, sexual intercourse, masturbation, sodomy, bestiality, or oral copulation." Ohio Adm.Code 4301:1-1-52(A)(1). Ohio Adm.Code 4301:1-1-52(B) now provides:

"[N]o permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:

"(1) Engage in any lewd or disorderly activities;

"(2) Appear in a state of nudity;

"(3) Touch, fondle, or caress the genitals, pubic area, buttocks, or female breasts of any person;

" * * * [or]

"(7) Commit improper conduct of any kind, type, or character that would offend the public's sense of decency, sobriety or good order."

On February 12, 1999, after the amendment of Rule 52, the Ohio Supreme Court granted a motion to dismiss the appeal on suggestion of mootness. *Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm.* (1999), 84 Ohio St.3d 1500, 705 N.E.2d 1241.

In its first assignment of error, appellant asserts that former Rule 52 is unconstitutionally overbroad on its face and as applied. Although appellant argues that former Rule 52 was overbroad as applied, it seems to be arguing that it was unconstitutional because it improperly suppressed the content of the message conveyed by its performers.

 While such actions as simulating sex and pummeling a customer with one's breasts are not afforded the same degree of protection as political discourse or classic literature, dancing, as appellant correctly points out, even nude dancing, is afforded some constitutional protection. See *Schad v. Mt. Ephraim* (1981), 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671; *Barnes v. Glen Theatre, Inc.* (1991), 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504. In *Barnes,* the court held that, while it would be unconstitutional for Indiana to proscribe nude dancing because of the erotic message conveyed, it was allowed to enforce a public indecency statute prohibiting nudity, a perceived evil, in order to advance the government's interest in protecting order and morality. Much like the public-indecency statute in *Barnes,* the commission's regulation sought to combat the perceived evils of "improper conduct" and "lewd activities" in establishments licensed to serve liquor.

 Conduct, such as the type of erotic dancing at issue here, may be " ' "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." ' " *State v. Lessin* (1993), 67 Ohio St.3d 487, 491, 620 N.E.2d 72, 76, fn. 3, quoting *Texas v. Johnson* (1989), 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342, 353, quoting *Spence v. Washington* (1974), 418 U.S. 405, 409, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842, 846. Certainly, physical contact between the performers at Junction 615 and the patrons en-

hanced the erotic message conveyed by their dancing, as well as increased the amount of the gratuity placed in their G-strings at the end of the performance. Any limitless number of actions could be said to have expressive elements, but not all actions are entitled to First Amendment protection. Appellant argues that the performances by its dancers should be protected because they conveyed a message and are protected under *Barnes.*

When "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the "nonspeech" element can justify incidental limitations on First Amendment freedoms. "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien* (1968), 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, 680.

As has been repeatedly held, restrictions on public nudity, public decency, and erotic dancing in liquor establishments are within the constitutional power of the government. *Barnes, supra.* Former Rule 52 was not intended to suppress free speech, but was enacted to further the state's interest in public decency, sobriety, and good order in liquor establishments. *Salem v. Liquor Control Commission* (1973), 34 Ohio St.2d 244, 246, 63 O.O.2d 387, 389, 298 N.E.2d 138, 140. It does not restrict First Amendment rights any more than necessary, as it allows performers to perform their acts, so long as they do not have improper physical contact with the patrons. The free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 362, 588 N.E.2d 116, 123–124 (court of appeals' opinion attached as appendix to the Supreme Court opinion); *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 222, 626 N.E.2d 59, 61. The activity for which appellant was cited may be regulated by the commission without violating the First Amendment to the United States Constitution or Section 11, Article I of the Ohio Constitution, if done so properly.

Although appellant's own conduct was not protected by the First Amendment, appellant argues under the doctrine of overbreadth that former Rule 52 could be used to prohibit speech that is clearly protected by the First Amendment, such as popular stand-up comedy routines and classic poetry. The Ohio Supreme Court held, in *Salem,* that former Rule 52 (then designated as LCc-1-52) was not overbroad. *Salem* relied strongly on the holding in *California v. LaRue* (1972),

409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342, which set forth that, although certain regulated conduct would be entitled to First Amendment protection if performed outside a liquor establishment, the Twenty-First Amendment gives states substantial power to regulate the liquor industry. In a later decision, *44 Liquormart, Inc. v. Rhode Island* (1996), 517 U.S. 484, 515–516, 116 S.Ct. 1495, 1514, 134 L.Ed.2d 711, 735–736, the court held that the Twenty-First Amendment could not be used to qualify protections afforded by other constitutional provisions, and overturned the reasoning used in the *LaRue* (and *Salem)* decision, but asserted that it was within the state's police power to restrict the kind of "bacchanalian revelries" described in the *LaRue* opinion.

By relying on *LaRue* and the Twenty-First Amendment, *Salem* did not consider the activity that former Rule 52 could prohibit under current First Amendment standards, especially the standards set forth for obscenity in *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (decided the day after *Salem* ). Former Rule 52 prohibited "songs which can or may convey either directly or by implication an immoral meaning," which would severely limit a liquor establishment's ability to play current popular music; "any indecent, profane or obscene language," which would severely restrict the number of comedians allowed to perform at comedy clubs; "any indecent, profane or obscene * * * pictures," which would reduce the choices of artwork used to decorate walls at a restaurant serving alcohol; and "dancing * * * which may or can, either directly or by implication, suggest an immoral act," which would allow the commission to prohibit dancing that is not obscene under the *Miller* standards.

While a reading of former Rule 52 reveals that an immense amount of protected material is prohibited by it, the constitutional overbreadth doctrine is a very limited and specific doctrine. The doctrine of overbreadth is an exception to the traditional rules of standing whereby a party may assert the First Amendment rights of those not before the court. *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 503–504, 105 S.Ct. 2794, 2801–2802, 86 L.Ed.2d 394, 405–406. A court may strike down an overly broad government enactment in its entirety, even if the party before the court has not engaged in activities protected by the First Amendment, " 'if in its reach it prohibits constitutionally protected conduct.' " *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 528, 709 N.E.2d 1148, quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 231. The doctrine allows such challenges because if an overly broad enactment is left in place, other persons may refrain from exercising their constitutionally protected rights for fear of criminal sanctions. *Village of Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 634, 100 S.Ct. 826, 835, 63 L.Ed.2d 73, 85–86. Overbreadth, however, is "manifestly

strong medicine" that is employed "sparingly, and only as a last resort." *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 613, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 841.

While former Rule 52 did not unconstitutionally restrict conduct by appellant that was protected by the First Amendment, appellant could also challenge it as being overbroad by showing that the rights of other, hypothetical persons, not before the court, would be infringed upon by the regulation. In the current case, Rule 52 was amended after the commission had issued a penalty to appellant and briefs were filed for this appeal, but prior to oral arguments and the release of this opinion. Though the former regulation presented the danger of others not before the court being restricted from constitutionally protected activity, the amendment of the regulation has removed that possible future danger. The rationale underlying overbreadth challenges is to safeguard the First Amendment rights for the future, not to remedy past violations or restrictions. Appellant's overbreadth challenge is, therefore, moot. See *Massachusetts v. Oakes* (1989), 491 U.S. 576, 582–584, 109 S.Ct. 2633, 2637–2638, 105 L.Ed.2d 493, 500–501; *Bigelow v. Virginia* (1975), 421 U.S. 809, 818, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600, 609–610. No challenge to the amended version is currently before this court. Under the instant scenario, we are limited to a review of whether the regulation, as formerly worded, was unconstitutional as applied to appellant. Because the overbroad challenge is now moot and the regulation did not prohibit activities protected by the First Amendment, appellant's first assignment of error is without merit.

In its second assignment of error, appellant asserts that former Rule 52 is unconstitutionally vague. While the doctrine of vagueness is closely related to the doctrine of overbreadth, it deals with appellant's due process rights, specifically, the right to know what conduct is prohibited under the regulation, not the First Amendment. An enactment is void for vagueness if it fails to define prohibited conduct with sufficient definiteness so that persons of ordinary intelligence can understand what is prohibited and encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson* (1983), 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 908–909.

The holding in *Salem* clearly asserted that the wording of former Rule 52 was vague. However, *Salem* concentrated solely on the actual wording used in the regulation and not the possibility it presented for arbitrary and discriminatory enforcement. In *Kolender* and the many United States Supreme Court cases analyzing vagueness that have come out since *Salem,* the court's main concern has been the possibility that an enactment would be applied in an arbitrary and discriminatory fashion.

Many of the same concerns that we had under the overbroad challenge are also presented in the vagueness challenge. The *Miller* case held, in part, that a particular piece of artwork or performance is obscene, and not protected by the First Amendment, if " 'the average person, applying *contemporary community standards'* would find the work, taken as a whole, appeals to the prurient interests [and] depicts or describes, in a patently offensive way, sexual conduct specifically defined *by the applicable state law.*" (Emphasis added.) *Miller v. California,* 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431. While the current case does not deal with obscenity, the standards set forth in *Miller* are helpful in determining what sort of regulation would permissibly reach appellant's conduct. As with defining obscenity, the commission must set forth some guideline for determining what conduct is "improper." Former Rule 52 mentioned no standards whatsoever to guide the agents in determining what would constitute a violation; they were left to decide for themselves, with unlimited discretion. Furthermore, nothing in the regulation spelled out that contact between dancers and patrons was being prohibited—it appears that it was the agents who determined that it was prohibited. A regulation giving agents such limitless discretion is impermissible. Therefore, appellant's second assignment of error has merit.

In appellant's third assignment of error, appellant asserts that the regulation violates the Equal Protection Clauses of both the Ohio and the United States Constitutions because it has been punished under the regulation while other establishments have not. However, appellant did not show how former Rule 52 discriminated against different classes or provide any evidence to support a claim of an equal protection violation to either the trial court or this court. Thus, its third assignment of error is without merit.

For the foregoing reasons, we conclude that former Ohio Adm.Code 4301:1–1–52 was unconstitutionally vague on its face and as applied to Junction 615, Inc. We, therefore, reverse the judgment of the Lake County Court of Common Pleas and remand this cause with instructions to enter judgment for appellant.

*Judgment reversed.*

FORD, P.J., and WILLIAM M. O'NEILL, J., concur.