OPINION
161 Dublin, Inc., appellant, appeals a judgment of the Franklin County Court of Common Pleas, which rendered a decision in favor of appellee, Ohio State Liquor Control Commission by revoking appellant's liquor permits.
Appellant holds liquor permits for the Remington Gentleman's Club ("Remington Club") in Columbus, Ohio. The Remington Club sells alcohol and also features female dancers. On April 8, 1999, two investigators from the Ohio Department of Safety Investigative Unit visited the Remington Club to perform a routine field investigation. One of the agents gave the following account of what occurred during their visit to the Remington Club. In a "private dance room" for the club, the agents witnessed a female dancer removing her bra and exposing her bare breasts. The report stated that the dancer:
 * * * proceed[ed] in placing her bare breast against [an] unidentified male patron[']s facial area. Note that [the dancer] began knocking the unidentified male patron[']s head from the left to right while her breast were still placed against sames face. * * * [the dancer] then straddled herself in a seated position across the lap of the earlier mentioned unidentified male patron and began thrusting her hips into sames groin area while allowing the unidentified male patron to caress her thighs and buttocks * * *. [The dancer] then positioned herself in front of the above stated unidentified male patron in a kneeling position and placed her facial area into the unidentified males patron[']s groin area. [The dancer] then began moving her head in an up and down fashion as to simulate oral sex.
The agents spoke with the club's general manager and informed him that the club was being cited for liquor permit violations pursuant to Ohio Adm. Code 4301:1-1-52. The incident was assigned case No. 2045-99. Appellant was cited for two violations of "improper conduct." The first violation ("Violation #1") was for engaging or allowing lewd activities (simulating sexual intercourse) to occur and the second violation ("Violation #2") was for engaging or allowing physical contact (touching, fondling or caressing buttocks, female breasts or self or patrons) to occur.
On July 1, 1999, two different investigators visited the Remington Club for a field investigation. The investigative report stated that when a female dancer unclothed, one of the agents "noted that the dancer had a clear `latex' covering over her nipples but the nipples were showing through." The agents witnessed another female dancer dancing without any covering on her nipples. One of the agents entered a back room called the "VIP Room" with a third female dancer. When the agent sat down, the female dancer "immediately started grinding on [his] lap" and pressing her breasts into his face. The agent stated that the third female dancer's nipples were also covered by a clear latex covering.
The agents returned to the stage area of the club and observed a fourth female dancer kneeling before a seated male patron, placing her head into his lap, and simulating the performance of oral sex. The dancer then sat down in front of one of the agents and placed his head into her groin area. The agent stated in his report that after this occurred, they talked with the manager of the club, identified themselves as agents for appellee, and informed him the club was being cited for liquor permit violations pursuant to Ohio Adm. Code 4301:1-1-52. This incident was assigned case No. 2042-99. The improper conduct cited by the agents was: Violation #1, engaging or allowing nudity because of insufficient covering of the dancers' nipples, and Violation #2, engaging or allowing physical contact between a patron and a dancer's breast.
A hearing was held on November 16, 1999 regarding the four violations of Ohio Adm. Code 4301:1-1-52 contained in case Nos. 2045-99 and 2042-99. At the hearing, appellant entered into a plea agreement with an assistant from the Attorney General's office who represented appellee. Violation #1 from both case Nos. 2045-99 and 2042-99 was dismissed in exchange for appellant stipulating to the facts supporting Violation #2 for both cases. Appellee concluded appellant's liquor license should be revoked.
Pursuant to R.C. 119.12, appellant filed a notice of appeal. Appellant stated in its notice that the grounds for the appeal were "that the orders appealed are not supported by reliable, probative and substantial evidence and that the orders appealed are not in accordance with law due to the fact that Ohio Administrative Code Rule 4301:1-1-52 is unconstitutional." After both parties filed briefs, the trial court filed a decision and judgment entry affirming the order of appellee on January 25, 2001. The court held that Ohio Adm. Code 4301:1-1-52(B)(7) was "unconstitutional as being both overbroad and vague as well as potentially abridging First Amendment rights by not being narrowly drawn." The court also held that the remaining provisions of Ohio Adm. Code4301:1-1-52 were constitutional stating that they were "narrowly drawn to accomplish the purpose for which they were promulgated." Appellant appeals this decision and presents the following assignment of error:
 THE COMMON PLEAS COURT ABUSED IT'S [sic] DISCRETION WHEN IT RULED THAT REGULATION 4301:1-1-52, OHIO ADM. CODE IS CONSTITUTIONAL.
Appellant argues in its single assignment of error that appellee could not revoke its liquor license based upon Ohio Adm. Code 4301:1-1-52
("Regulation 52") because it is unconstitutional. In support of this argument, appellant cites to J.L. Spoons, Inc. v. O'Connor (N.D.Ohio. 2000), 194 F.R.D. 589 ("J.L. Spoons II"), where a United States District Court in the Northern District of Ohio held that sections (A)(1), (A)(3), (B)(2), and (B)(3) were unconstitutionally overbroad and (B)(7) was unconstitutionally vague and overbroad. The Court also held that the phrase "lewd activities" as defined in (B)(1) was unconstitutionally overbroad. The trial court declined to follow the reasoning of J.L. Spoons II, stating that "[d]espite the fact that the federal court for the Northern District of Ohio has enjoined the enforcement of parts of new Regulation 52, to date, the [United States] Southern District and the State Courts have declined to follow suit."
The First Amendment of the United States Constitution states in part: "Congress shall make no law * * * abridging the freedom of speech." Nude dancing can be found to be considered "expressive conduct" falling within "the outer ambit of the First Amendment's protection." City of Erie v. Pap's A.M. (2000), 529 U.S. 277, 289, 120 S.Ct. 1382, 1391. TheFourteenth Amendment of the United States Constitution makes the freedom of speech provision of the First Amendment applicable to the states. City of Ladue v. Gilleo (1994), 512 U.S. 43, 45, 114 S.Ct. 2038, 2040, fn. 1.
Restrictions on public nudity, public decency, and erotic dancing in liquor establishments are within the constitutional power of the government. Junction 615, Inc. v. Ohio Liquor Control Comm. (1999),135 Ohio App.3d 33, 40, following Barnes v. Glen Theatre, Inc. (1991),501 U.S. 560, 111 S.Ct. 2456. In applying the Twenty-first Amendment of the United States Constitution to a state's regulation of nude dancing, the United States Supreme Court stated: "The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." New York State Liquor Auth. v. Bellanca (1981), 452 U.S. 714, 717, 101 S.Ct. 2599,2601. "The obvious `harmful potentialities' when the sale of intoxicating beverages occurs in retail outlets necessitates that the liquor industry be strictly regulated, and that regulation includes not only the sale of liquor but also the conditions and circumstances surrounding the liquor premises." Salem v. Liquor Control Comm. (1973), 34 Ohio St.2d 244, 245. Additionally, "actions such as simulating sex and pummeling a customer with one's breasts are not afforded the same degree of protection as political discourse or classic literature [and] dancing * * * even nude dancing." Junction 615, at 39. Therefore, we find appellee had the authority to regulate the actions of appellant.
The next question we address is whether the method by which appellee regulated appellant pursuant to Regulation 52 violated theFirst Amendment. Regulation 52's prohibitions for liquor permit holders are contained in Ohio Adm. Code 4301:1-1-52(B), which states:
 Prohibited activities: no permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
(1) Engage in any lewd or disorderly activities;
(2) Appear in a state of nudity;
 (3) Touch, fondle, or caress the genitals, pubic area, buttocks, or female breasts of any person;
 (4) Allow in, upon or about the licensed permit premises, or engage in or facilitate in, the possession, use, manufacture, transfer, or sale of any dangerous drug, controlled substance, narcotic, harmful intoxicant, counterfeit controlled substance, drug, drug paraphernalia, or drug abuse instrument as said terms are defined in ORC Chapter 2925.
 (5) Solicit for value, or possess, buy, sell, use, alter or transfer, or allow to be solicited, possessed, bought, sold, used, altered, or transferred for value USDA food stamps coupons, WIC program benefit vouchers, or other electronically transmitted benefits, in a manner not specifically authorized by the Food Stamp Act of 1977, or the Child Nutrition Act of 1966. A conviction or consent decree against the permit holder, its agent or employee for a violation of any of such acts constitutes evidence of a violation of this rule.
 (6) Obtain or exert control over property or services of another, with purpose to deprive the owner therefor[e] without the consent of the owner or person authorized to consent, or by deception, fraud or threat. Nor shall any permit holder, his agent, or employee, use the licensed permit premises to receive, retain, or dispose of property of another, knowing or having reasonable cause to believe such property has been obtained through the commission of a theft offense
 (7) Commit improper conduct of any kind, type, or character that would offend the public's sense of decency, sobriety or good order.
The definitions for Regulation 52 are contained in Ohio Adm. Code4301:1-1-52(A), which states:
 (1) "Lewd activities" are those activities (including those which are electronically reproduced) that contain lustful, lascivious or lecherous behavior and includes, but is not limited to acts of, or acts that simulate, sexual intercourse, masturbation, sodomy, bestiality, or oral copulation.
 (2) "Disorderly activities" are those that harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls.
 (3) "Nudity" is the showing (including electronically showing) of the human male or female genitals, pubic area or buttocks (or anus) with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple and/or areola, or the showing of the covered male genitals in a discernibly turgid state.
In the present case, a review of the Ohio Department of Safety Investigation Unit's Enforcement Investigative Report shows the agents did not specify which section of Regulation 52(B) appellant violated. A review of the violation notices left by the agents similarly shows they did not specify a section of Regulation 52(B) in the violation notices.[1] The record contains a photocopy of a form, which may have been filled out by one of the agents involved in the April 8, 1999 incident, with certain sections of Regulation 52 circled, possibly with the intention of informing the parties which sections of Regulation 52(B) were violated. The sections on the form that were circled are as follows:
 (5) dance in a lewd and/or indecent and/or obscene manner.
 (6) have improper physical contact with patrons, to wit, allowing them to fondle their breasts and/or pubic area and/or buttocks.
However, a review of the current version of Regulation 52 shows that the circled "(5)" and "(6)" sections on this form do not exactly correspond with a current section of Regulation 52.
Since appellee did not specify what sections of Regulation 52(B) were allegedly violated by appellant, in order for this court to review the constitutionality of the affected sections of Regulation 52(B), we must determine which sections appellant allegedly violated.[2] After a review of the claimed violations, coupled with the facts stated in the Enforcement Investigative Report, we find the sections of Regulation 52(B) that are applicable or closely related to the facts of the present case are (B)(1), (B)(2), (B)(3), and (B)(7). Therefore, we will not address the constitutionality of Regulation 52 sections (B)(4), (B)(5), and (B)(6).
In its appellate brief, appellant contends that Regulation 52 is overbroad because:
 * * * the section[']s ban on touching, sweeps in a variety of expressive activity. First, §(B)(3) covers ballet and modern dance performances, in which dancers frequently are required, for example, to "touch" the clothed buttocks of other dancers. Second, the ban on touching includes not touching oneself, which would prevent many entertainers from engaging in many of the erotic messages portrayed in their performances, including Michael Jackson.
In response, appellee argues that Regulation 52 is neither overbroad nor vague.
The issue of whether Regulation 52 is unconstitutionally overbroad or vague has been discussed in many Ohio cases. In 1973, the Ohio Supreme Court addressed the question of whether LCc-1-52, a predecessor of Regulation 52, was unconstitutionally overbroad or vague in Salem, supra. In affirming appellee's ability to suspend a liquor control permit holder's permit for twenty-eight days, the court stated:
 We are of the opinion that to comply with appellant's assertion, that Regulation LCc-1-52 must be less vague, would require the commission to spell out in detail not only the proper attire to be worn in permit premises, but also to detail in its regulations the host of other conditions surrounding the regulation of the industry. We find appellant's contention to be without merit, because the statutory relationship created between commission and licensee never intended such a result.
 To the contrary, in our opinion a licensee, by consenting to abide by the liquor statutes and regulations when applying for his license, has thereby bound himself to operate as the Liquor Control Commission believes is consistent with "public decency, sobriety, and good order." Salem, at 246, quoting Angola Corp. v. Liquor Control Comm. (1972), 33 Ohio App.2d 87, 90-91.
LCc-1-52 was modified and later became Ohio Adm. Code 4301:1-1-52. The version of Regulation 52 that was in effect until December 10, 1998 ("Former Regulation 52"), stated:
 No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances, lewd, immoral activities or brawls; or any indecent, profane or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.
 Entertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited. Nor shall any permit holder, his agent, or employee possess or cause to have printed or distributed any lewd, immoral, indecent, or obscene literature, pictures, or advertising material.
Our court found Former Regulation 52 to be constitutional in WFO Corp. v. Ohio Liquor Control Comm. (Oct. 31, 1996), Franklin App. No. 96APE05-558, unreported, discretionary appeal not allowed (1997),78 Ohio St.3d 1425, ("WFO I"); WFO Corp. v. Ohio Liquor Control Comm. (May 29, 1997), Franklin App. No. 96APE10-1314, unreported; Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm. (1998),125 Ohio App.3d 619, and Kings Pub, Inc. v. Ohio Liquor Control Comm. (Aug. 10, 2000), Franklin App. No. 99AP-1088, unreported. In WFO I, we held that Former Regulation 52 "does not unconstitutionally abridge speech in violation of the First Amendment." We also held that "Regulation 52 is not unconstitutionally vague and/or overbroad" based upon the Ohio Supreme Court's opinion in Salem, supra. All of our subsequent cases have been based upon our analysis in WFO I.
Two other Ohio appellate districts have similarly held that Former Regulation 52 is constitutional. The Sixth Appellate District of Ohio in Deen v. Ohio Liquor Control Comm. (Feb. 19, 1999), Lucas App. No. L-98-1233, unreported, addressed the question of whether Former Regulation 52 was "overbroad and vague and therefore violative of theFirst Amendment to the United States Constitution and the concomitant provisions of the Ohio Constitution." The appellate court held that Former Regulation 52 was neither overbroad nor vague because "the Supreme Court of Ohio has spoken definitively on the issue in the older case of Salem v. Liquor Control Comm." Id. The First Appellate District of Ohio addressed the question of whether Former Regulation 52 was "unconstitutionally vague in violation of the Fourteenth Amendment's guarantee of due process" in Amani Services Corp. v. Ohio Dept. of Commerce, Div. of Liquor Control (2000), 137 Ohio App.3d 252, 254. In determining that Former Regulation 52 was not unconstitutionally vague, the court found that the "only question here is whether a person of ordinary intelligence would have fair notice that selling a crack pipe is `improper conduct.' The answer is an unqualified yes." Id. at 257-258. (Citations omitted.)
Not all Ohio appellate districts have agreed with these decisions finding Former Regulation 52 constitutional. The Second Appellate District of Ohio has held that "Regulation 52 is facially overbroad in violation of the First Amendment to the United States Constitution and the Free Speech Clause found in Section 11, Article I of the Ohio Constitution." Dayton Tavern, Inc. v. Liquor Control Comm. (Aug. 27, 1999), Montgomery App. No. 17651, unreported. The appellate court held that the "problem with Regulation 52 is that it is facially overbroad because it sweeps within its prohibitions a substantial amount of constitutionally protected speech and expressive conduct." Id. The court stated: "Although the doctrine of overbreadth is to be used sparingly and only as a last resort, the doctrine is not a myth. If it does not apply here, it is difficult to see where it would have any application." Id. The Second Appellate District continued to follow this reasoning in Dayton Tavern, Inc. v. Ohio Liquor Control Comm. (1999),134 Ohio App.3d 816, 821-822, and Sowders v. Ohio Liquor Control Comm. (Aug. 4, 2000), Montgomery App. No. 18173, unreported.
The Eleventh Appellate District of Ohio found in Junction 615, supra, that "a reading of former Rule 52 reveals that an immense amount of protected material is prohibited by it." Id. at 41. The appellate court did not make a finding that Former Regulation 52 is overbroad because it had been amended effective December 10, 1998, and the "overbreadth challenge is, therefore, moot." Id. at 42. However, the court held that Former Regulation 52 was unconstitutionally vague because:
 Former Rule 52 mentioned no standards whatsoever to guide the agents in determining what would constitute a violation; they were left to decide for themselves, with unlimited discretion. Furthermore, nothing in the regulation spelled out that contact between dancers and patrons was being prohibited — it appears that it was the agents who determined that it was prohibited. A regulation giving agents such limitless discretion is impermissible. Id. at 43.
The Eighth Appellate District of Ohio held in Cleveland's PM on the Boardwalk, Ltd. v. Ohio Liquor Control Comm. (Jan. 23, 1997), Cuyahoga App. No. 69779, unreported, that Former Regulation 52 was "facially overbroad and overbroad as applied" based upon the Free Speech Clause in Section 2, Article I, Ohio Constitution. The appellate court used cases interpreting the Free Speech clause of the First Amendment to the United States Constitution in its analysis, stating that the Ohio Constitution Free Speech Clause "is no broader than the United States Constitution, and the case law of the First Amendment to the United States Constitution is a proper basis for interpreting Ohio's free speech clause." Id., following Eastwood Mall v. Slanco (1994), 68 Ohio St.3d 221. In finding Former Rule 52 overbroad, the court in Cleveland PM stated:
 Under its usage a permit holder would be forbidden from reading or having read out loud "A Street Car Named Desire" or the modern "Victor Victoria." Furthermore, comics like Eddie Murphy and Richard Pryor would be censored. Also, Chaucer's Canterbury Tales, poetry or books describing rape, James Joyce's Ulysses, rap songs, and many television shows would be forbidden under Rule 52.
 Rule 52's reach is so broad that a permit holder would lose his license if a fight broke out between two customers regardless of the permit holder's efforts to stop the fight. Additionally, it would cause a permit holder to lose his license if a customer used profane language. In reading the bare language of Rule 52, it is difficult to ascertain its legitimate application. Obscene, immoral, and improper are used interchangeably in the rule. Consequently, it is difficult to determine if Rule 52 is restricted to sexually explicit material.
After the release of our decision in Planet Earth Entertainment, supra, a motion to certify a conflict to the Ohio Supreme Court was filed with our court pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25. In a memorandum decision dated April 14, 1998, this court stated:
 We conclude that our judgment in the present case is in conflict with a judgment pronounced upon the same question by another court of appeals of this state. More specifically, we find that the judgment of the Eighth District Court of Appeals in Cleveland's PM on the Boardwalk is in conflict with our decision in the present case and we therefore grant appellee's motion to certify the conflict to the Supreme Court of Ohio.
The Ohio Supreme Court determined that a conflict existed and granted the motion to certify a conflict in Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 1432 . The question the Ohio Supreme Court was to address was: "Whether the prohibition against semi-nude dancing in liquor establishments, enforced under Ohio Adm. Code4301:1-1-52, unconstitutionally abridges the right of freedom of speech in violation of the First Amendment to the United States Constitution and Section 11, Article I, Ohio Constitution." Id. However, because of the changes to Former Regulation 52 effective December 10, 1998, the Ohio Supreme Court, similar to the reasoning used by the Eleventh Appellate District of Ohio in Junction 615, supra, granted a "motion to dismiss on suggestion of mootness" filed by appellee. Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm. (1999), 84 Ohio St.3d 1500. See, also, Planet Earth Entertainment, Inc. v. Ohio Liquor Control Comm. (1998), 82 Ohio St.3d 1433.
A review of case law shows no Ohio Appellate Court has analyzed whether the current version of Regulation 52 is constitutional. The only reported opinions concerning the current version of Regulation 52 are the two decisions from the United States District Court in J.L. Spoons II and J.L. Spoons, Inc. v. O'Connor (N.D.Ohio. 1999), 190 F.R.D. 433, ("J.L. Spoons I"). In J.L. Spoons I, the Federal District Court granted a preliminary injunction enjoining appellee from enforcing sections (A)(1), (A)(3), (B)(1) as it pertains to lewd activities, and (B)(2), (B)(3), and (B)(7) of the new Regulation 52 in the Northern District of Ohio.[3]
The court reached this determination after finding that the above sections are unconstitutionally overbroad under the First Amendment of the United States Constitution. The court also found that (B)(7) is unconstitutionally vague.
In J.L. Spoons II, the same Federal Court reaffirmed its earlier decision in J.L. Spoons I after appellee filed a motion for reconsideration. The court again stated that "the following portions of Rule 52 [are] unconstitutional: §§ (A)(1), (A)(3), (B)(1) (in part), (B)(2), (B)(3), and (B)(7); [and] severs and permanently enjoins the enforcement of §§ (A)(1), (A)(3), (B)(1) with regard to `lewd' activities, (B)(2), (B)(3), and (B)(7)." J.L. Spoons II, at 595.
It is with this prior case history concerning Regulation 52 where Ohio appellate districts have not been in agreement concerning the constitutionality of former Regulation 52 that we now address the question of whether the current Regulation 52 is unconstitutionally overbroad and/or vague. As previously stated, no other Ohio Appellate Court has analyzed whether the current version of Regulation 52 is constitutional. However, as mentioned above, the United States District Court for the Northern District of Ohio has found sections of Regulation 52 unconstitutional in J.L. Spoons I and J.L. Spoons II. Although we find the analysis of the United States District Court persuasive, it is not binding upon this court for various reasons and, therefore, we will do our own analysis of the constitutionality of Regulation 52. State v. Glover (1978), 60 Ohio App.2d 283, 287. See, also, State v. Nabozny (1978), 54 Ohio St.2d 195, 207, judgment vacated on different grounds,439 U.S. 811, 99 S.Ct. 70.
Under the First Amendment's doctrine of freedom of speech:
 [I]mprecise laws can be attacked on their face under two different doctrines. First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. City of Chicago v. Morales (1999), 527 U.S. 41, 52, 119 S.Ct. 1849, 1857. (Citations omitted.)
The reason for this is that a "greater degree of precision is required when a statute or regulation impinges upon conduct protected by theFirst Amendment." Amani Services Corp., supra, at 256, following Hynes v. Mayor Council of the Borough of Oradell (1976), 425 U.S. 610, 620,96 S.Ct. 1755, 1760. Even though the Twenty-first Amendment to the United States Constitution gives states the authority to regulate the sale of liquor, "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in theFirst Amendment." 44 Liquormart, Inc. v. Rhode Island (1996), 517 U.S. 484,516, 116 S.Ct. 1495, 1515.
A court may strike down an overly broad government enactment in its entirety, even if the party before the court has not engaged in activities protected by the First Amendment if in its reach it prohibits constitutionally protected conduct. Junction 615, supra, at 41. "[L]egislation that regulates conduct rather than `pure speech' can be invalidated as unconstitutionally overbroad on its face only if the overbreadth is shown to be `real [and] substantial * * * judged in relation to the statute's plainly legitimate sweep,' and the statute is not susceptible of a limiting construction or impartial invalidation." Cincinnati v. Thompson (1994), 96 Ohio App.3d 7, 21, quoting Broadrick v. Oklahoma (1973), 413 U.S. 601, 93 S.Ct. 2908. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite theFirst Amendment, the United States Supreme Court has recognized that the overbreadth doctrine is "strong medicine" and has employed it with hesitation, and then only as a last resort. Los Angeles Police Dept. v. United Reporting Publishing Corp. (1999), 528 U.S. 32, 39,120 S.Ct. 483, 489.
In order for a statute to be found overbroad, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." City Council of Los Angeles v. Vincent (1984), 466 U.S. 789, 801, 104 S.Ct. 2118,2126; Cincinnati, supra, at 22. The overbreadth must be substantial to trigger facial invalidation. Fed. Election Comm. v. Colorado Republican Fed. Campaign Comm. (2001), 533 U.S. 431, 121 S.Ct. 2351, 2366, fn. 17. Additionally, the overbreadth of the statute must be judged in relation to the statute's plainly legitimate sweep. Hill v. Colorado (2000),530 U.S. 703, 732, 120 S.Ct. 2480, 2498, following Broadrick, supra, at 615, 2918.
Section (B)(1) states that no permit holder, his agent, or employee, shall knowingly or willfully allow in and upon his licensed permit premises any persons to "[e]ngage in any lewd or disorderly activities." Section (A)(1) defines "lewd activities" to include "lustful, lascivious or lecherous behavior." This includes acts that "simulate, sexual intercourse" and activities "which are electronically reproduced." The Federal District Court in J.L. Spoons I found these sections overbroad using the following analysis:
 With respect to §§ (A)(1) and (B)(1), the most glaring problem is that these sections prohibit the showing of "electronically reproduced" images containing actual or simulated sexual activities. [T]he prohibition on electronic displays includes televisions, movie theaters, and computers. Thus, §§ (A)(1) and (B)(1) prohibit an Internet café with a liquor license from allowing its customers to view "lustful, lascivious or lecherous behavior" via computers — even though it is now established that use of the Internet enjoys full protection under the First Amendment. * * * Moreover, any bar that has a television set risks violating §§ (A)(1) and (B)(1) if it chooses to air Home Box Office or late night television on the monitor.
 The second major flaw with §§ (A)(1) and (B)(1) is that these sections prohibit the "simulation" of a variety of sexual behavior. Rule 52 does not define "simulate" * * *. The ban on simulation even applies to individuals who are fully clothed. Hence, on its face, § (A)(1) (in conjunction with § (B)(1)) sweeps in any artistic performance containing simulated sexual behavior — — including such mainstream hits as "Miss Saigon" and "Rent" — that occurs in a theater, comedy club, supper club, musical venue, or other forum with a liquor license.
* * *
 Moreover, because of the prohibition on "electronically reproduced" activities, a movie theater with a liquor license may violate §§ (A)(1) and (B)(1) every time it shows a "Rated R" film. J.L. Spoons I, supra, at 441-442.
We agree with the reasoning of J.L. Spoons I. (A)(1)'s definition of lewd activities incorporate a large amount of protected material because of the expansive nature of the definition. (A)(1)'s inclusion of electronically produced material and acts that simulate sexual intercourse by fully clothed individuals is substantially overbroad, sufficient to find that it is unconstitutionally overbroad.
A review of (A)(2)'s definition shows that it does not have the same type of overbroad application as (A)(1). "Disorderly activities" is limited to activities that "harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls." These terms can be readily defined in the criminal statutes found in R.C. Chapter 29. See R.C. 2901.01(A), 2903.13(A), and 2903.21. Therefore, we find (A)(2)'s definition of "disorderly activities" not overbroad.
(B)(2) states that no permit holder, his agent, or employee, shall knowingly or willfully allow in and upon his licensed permit premises any persons to appear in a "state of nudity" which is defined in (A)(3). We disagree with the Federal District Court's conclusions in J.L. Spoons I and II that (B)(2) and (A)(3) reach a substantial amount of constitutionally protected conduct because Regulation 52 is limited to liquor permit holders.
The United States Supreme Court interpreting the Twenty-first Amendment has stated that "[t]he State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." New York State Liquor Auth. v. Bellanca (1981), 452 U.S. 714, 717, 101 S.Ct. 2599, 2601. Additionally, after applying the four-part test contained in United States v. O'Brien (1968), 391 U.S. 367, 88 S.Ct. 1673, the United States Supreme Court upheld a public indecency ordinance that made it a summary offense to "knowingly or intentionally appear in public in a `state of nudity'" in City of Erie, supra, at 277.
 We conclude that Erie's asserted interest in combating the negative secondary effects associated with adult entertainment establishments like Kandyland is unrelated to the suppression of the erotic message conveyed by nude dancing. The ordinance prohibiting public nudity is therefore valid if it satisfies the four-factor test from O'Brien for evaluating restrictions on symbolic speech. City of Erie, supra, at 296, 1394-1395.
Similarly, if the state has the power to ban public nudity in adult entertainment establishments similar to the one in City of Erie, it follows that the state also has the power to ban nudity shown electronically in those adult entertainment establishments. Accordingly, we find that (B)(2) and (A)(3) are not unconstitutionally overbroad.
(B)(3) states that no permit holder, his agent, or employee, shall knowingly or willfully allow in and upon his licensed permit premises any persons to "[t]ouch, fondle, or caress the genitals, pubic area, buttocks, or female breasts of any person." The fact that mere touching of the genitals, pubic area, buttocks, or female breast of any person could subject the permit owner to the possible revocation of a liquor permit demonstrates the overbreadth of (B)(3). Some of the examples of protected expression included within the scope of "touch" as used in (B)(3) were provided in J.L. Spoons I, at 433:
 While it does not appear that this section's ban on fondling or caressing certain anatomical areas reaches a substantial amount of protected expression, the section's ban on touching does sweep in a variety of expressive activity. First, § (B)(3) covers ballet and modern dance performances in which dancers frequently are required, for example, to "touch" the clothed buttocks of other dancers. Second * * * because the ban on touching includes not touching oneself, § (B)(3) would prevent Michael Jackson from engaging in his famous groin-grabbing dance move. * * * [P]rofessional baseball players violate § (B)(3) * * * every time they readjust their jockstraps.
We agree with the Federal Court's analysis and similarly find that (B)(3)'s use of the word "touch" is unconstitutionally overbroad.
While it is evident that Regulation 52's use of the word "touch" is overbroad, we do not reach a similar conclusion regarding the words "fondle" or "caress." The Federal Court in fact stated that "it does not appear that this section's ban on fondling or caressing certain anatomical areas reaches a substantial amount of protected expression * * *." Id. When "fondle" or "caress" are used in conjunction with "the genitals, pubic area, buttocks, or female breasts of any person," this connotates an action more associated with sexual actions than mere touching. Additionally, restricting the fondling or caressing of the genitals, pubic area, buttocks, or female breasts of any person in a liquor establishment would not be substantially overbroad in its application. Therefore, we find that Regulation 52's use of the words "fondle" and "caress" is not unconstitutionally overbroad.
(B)(7) includes the phrase "improper conduct of any kind." Although "improper conduct" is qualified as conduct "that would offend the public's sense of decency, sobriety or good order," "improper conduct" is not defined in Regulation 52. Although it would be easy to show that "improper conduct" could substantially include protected expression, the best demonstration of why (B)(7) is unconstitutional is the vagueness of the phrase "improper conduct of any kind."
A statute can be impermissibly vague for either of two independent reasons: (1) It fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) it authorizes or even encourages arbitrary and discriminatory enforcement. Hill, supra. "A law is void for vagueness if persons of common intelligence must necessarily guess at its meaning." State v. Johnson (2000), 139 Ohio App.3d 952, 956, following Coates v. Cincinnati (1971),402 U.S. 611, 91 S.Ct. 1686. "The prohibition against vague regulations of speech is based in part on the need to eliminate the impermissible risk of discriminatory enforcement * * * for history shows that speech is suppressed when either the speaker or the message is critical of those who enforce the law." Gentile v. State Bar of Nevada (1991),501 U.S. 1030, 1051, 111 S.Ct. 2720, 2732. (Citations omitted.)
The difficulty with (B)(7) is how broadly or narrowly "improper conduct" could be defined by a person. (B)(7) provides little guidance as to how broadly or narrowly the regulation should be construed. The determination of what conduct "that would offend the public's sense of decency, sobriety or good order," is left to appellee's agents. Commenting on this fact, the court in J.L. Spoons I, at 433 stated that "there are no standards to guide the [appellee's] discretion in enforcing § (B)(7)." Accordingly, we find (B)(7) both unconstitutionally overbroad and vague.
Even though we have found (A)(1), (B)(7), and a portion of (B)(1) and (B)(3) unconstitutional, it does not necessarily follow that appellee's revocation of appellant's liquor permit must be reversed. R.C. 1.50
states: "If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable." Even though the Ohio Administrative Code does not have a similar severability provision, we apply the principles of R.C. 1.50. Additionally, when determining whether a section of a statute is severable, the following test must be applied:
 (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only? Simmons-Harris v. Goff (1999), 86 Ohio St.3d 1, 8, quoting Geiger v. Geiger (1927), 117 Ohio St. 451, 466.
After applying R.C. 1.50 and the Geiger severability test, we find that the other provisions of Regulation 52 (A)(2), (A)(3), and (B)(1) concerning "disorderly activities," and (B)(2), (B)(4), (B)(5), and (B)(6) are not affected by our determination that (A)(1) and (B)(1) concerning "lewd activities," (B)(3) regarding "touch," and (B)(7) are unconstitutional. We also find that by striking the word "touch" from (B)(3), the rest of (B)(3) is constitutional. Without the word "touch," the remaining portion of (B)(3) stands by itself, "touch" is not so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the legislature, and it is unnecessary to insert words or terms after the word "touch" is removed.
After determining which sections of Regulation 52 are constitutional, we now review the facts used by appellee in determining that appellant violated Regulation 52. The standard of review for the court of common pleas for an administrative appeal is given in R.C. 119.12, which states in part:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence. Crowe v. State Bd. of Edn. (Oct. 26, 1999), Franklin App. No. 99AP-78, unreported, discretionary appeal not allowed (2000), 88 Ohio St.3d 1437. The common pleas court is restricted to determining whether an administrative agency's decision "was supported by reliable, probative, and substantial evidence, and was in accordance with law, and the further appeal to the court of appeals [is] limited to a determination of whether the common pleas court had abused its discretion." State ex rel. Baker v. State Personnel Bd. of Review (1999), 85 Ohio St.3d 640, 643.
 "In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion '* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' * * * Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment.
* * *
 The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, quoting Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. (Citations omitted.)
The two violations of Regulation 52 cited by appellee were: (1) "allow[ing] female go-go dancers to have improper physical contact with patrons, to wit allowing them to fondle their breasts" in case No. 2042-99, and (2) allowing "female go-go dancers to have improper physical contact with patrons to wit, allowing them to fondle their breasts and/or pubic area and/or buttocks and/or have improper physical contact with patrons" in case No. 2045-99. While these activities could be construed as violations of (B)(1) based upon (A)(1)'s definition of lewd activities, or (B)(7), we have found these sections to be unconstitutionally overbroad or vague. However, reasonable construction compels us to find these activities are violations of (B)(3) even after the word "touch" is removed from the section. Therefore, we find that the trial court did not abuse its discretion because appellee's decision revoking appellant's license is based upon a violation of Regulation 52 and was supported by reliable, probative, and substantial evidence, and was in accordance with law.[4]
Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, P.J., and KENNEDY, J., concur.
[1] We note that both violation notices did use the phrase "allowing improper conduct." While this could indicate that the section the agents perceived to have been violated was Regulation 52(B)(7), the nature of the violations coupled with the nebulous nature of the phrase "improper conduct" could indicate that the agents were citing to violations of other sections of Regulation 52(B).
[2] While the only issue before this court is the constitutionality of Regulation 52, we note that while attempting to determine what actions of appellant constituted a violation, the violation notices themselves appear to be deficient. However, since this issue is not before this court, we are unable to address it.
[3] The Tenth Appellate District of Ohio does not lie within the jurisdiction of the United States District Court for the Northern District of Ohio.
[4] We note that the evidence would have supported a finding that appellant violated Regulation 52 based upon case No. 2042-99, Violation #1 (allowing "female go-go dancers to expose their bare breasts"). However, this violation was dismissed by appellee after appellant stipulated to the facts supporting Violation #2 in both case Nos. 2042-99 and 2045-99.