DAYTON TAVERN, INC., Appellant,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellee.

[Cite as *Dayton Tavern, Inc. v. Ohio Liquor Control Comm.* (1999), 134 Ohio App.3d 816.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17716.

Decided Sept. 24, 1999.

*Richard A. Boucher*, for appellant.

*Betty D. Montgomery*, Attorney General, and *David A. Raber*, Assistant Attorney General, for appellee.

---

BROGAN, Judge.

In this case, Dayton Tavern, Inc. ("the tavern") appeals from a trial court decision overruling the tavern's appeal from an administrative order of the Ohio Liquor Control Commission ("OLCC"). The order suspended the tavern's liquor permit for thirty days based on events that took place on July 24, 1997, when four agents of the Ohio Department of Public Safety visited the tavern to investigate a complaint of "improper conduct" (nude dancers and drugs). When three of the agents entered the tavern, posing as patrons, they saw two women dancing. Allegedly, the women wore only G-strings and a transparent substance on the nipples and areola portions of their breasts. As a result, the agents cited the tavern for a violation of Ohio Adm.Code 4301:1–1–52 ("Rule 52"). Rule 52 provided:

"No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character; any improper disturbances, lewd, immoral activities or brawls; or any indecent, profane or obscene language, songs, entertainment, literature, pictures, or advertising materials; nor shall any entertainment consisting of the spoken language or songs which can or may convey either directly or by implication an immoral meaning be permitted in, upon or about the permit premises.

"Entertainment consisting of dancing, either solo or otherwise, which may or can, either directly or by implication, suggest an immoral act is prohibited. Nor shall any permit holder, his agent, or employee possess or cause to have printed or distributed any lewd, immoral, indecent, or obscene literature, pictures or advertising material."

At a hearing held on May 6, 1998, the OLCC found the tavern in violation of Rule 52. The tavern then appealed to the Montgomery County Common Pleas Court, which rejected the tavern's challenges to the evidence and to the constitutionality of Rule 52. On further appeal to our court, the tavern raises the following assignments of error:

"I. The Court of Common Pleas of Montgomery County, Ohio erred in sustaining the commission's order because it was not supported by substantial, reliable, and probative evidence.

"II. The decision rendered by the Court of Common Pleas of Montgomery County, Ohio must be reversed because Ohio Administrative Code 4301:1–1–52 is unconstitutionally overbroad under Art. I, Section 11 of the Ohio Constitution and the First and Fourteenth Amendments to the United States Constitution."

After reviewing the record and applicable law, we find the appeal meritorious and reverse the judgment of the trial court. In particular, we find that this case is controlled by our prior opinion in *Dayton Tavern, Inc. v. Ohio Liquor Control Comm.* (Aug. 27, 1999), Montgomery App. No. 17651, unreported, 1999 WL 941826.

I

In the first assignment of error, the tavern claims that the trial court erred because OLCC's decision was not supported by substantial, reliable, and probative evidence. Primarily, the tavern focuses on Policy LED–200.19, which is dated June 17, 1996. The subject of the policy is "improper dancer conduct," and its purpose is "to establish procedures to maintain uniform enforcement of Rule 52 in the area of dancer conduct, and improper conduct by the permit holder, his agent, or employee."

Regarding dancer attire, the policy states:

"The attire must at minimum opaquely cover the nipple and areola portion of the female breast. 'Pasties' or other coverings are sufficient as long as the entire nipple and areola portion are rendered invisible. These coverings cannot be designed or decorated in such a way as to simulate the appearance of the nipple and areola."

According to the tavern, this policy was circulated generally to Dayton Tavern and other bar owners, and specifically allows the use of pasties if they completely obscure the nipple and areola area of the breast. As factual support for its argument, the tavern relies on a stipulation filed with the OLCC. In the stipulation, the tavern said its dancers wore pasties that were latex, were not transparent, and were of a type generally used and popularized in the Greater Dayton, Montgomery County area in liquor premises featuring adult entertainment.

The tavern did not appear at the OLCC hearing. Instead, the tavern's counsel sent the OLCC a "Stipulation, Denial, and Motion to Dismiss on Constitutional Grounds" for submission in lieu of appearance (described at the hearing as Permit Holder's Exhibit 1). Exhibit 1 contained the factual assertions just

mentioned as well as a copy of Policy LED–200.19, which was alleged to be a memo published by the Ohio Department of Public Safety.

OLCC did not take testimony at the hearing, which, according to the transcript, lasted only about three minutes. An Assistant Attorney General did appear at the hearing, and objected to the contents of the tavern's stipulation and motion to dismiss because he had not received a copy. Although the letter accompanying Exhibit 1 indicated that a copy had been sent to the Ohio Attorney General's Office, it was apparently not received.

The Attorney General did not present witnesses, but simply submitted a copy of the investigator's report. Immediately after hearing from the Attorney General, the OLCC chairman excluded the statements in the tavern's submission as "hearsay" and found the tavern in violation. Ironically, the investigator's report was not excluded even though it was unsworn.

Neither the OLCC nor the trial court discussed Policy LED–200.19 in their decisions. In fact, the OLCC order contains no findings at all except the mere statement that the tavern was in violation. The tavern alleges that both the OLCC and trial court erred in failing to address the policy. Additionally, the tavern argues that its evidence, as contained in Exhibit 1 and Policy LED–200.19, was more probative than the investigator's report (and, therefore, showed that no violation had occurred).

■■■ Standards for reviewing administrative orders indicate that the common pleas court must affirm if the order is supported by reliable, probative, and substantial evidence, and also conforms to the law. *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 81, 697 N.E.2d 655, 657–658. Further, the common pleas court must defer to the agency's findings of fact unless the court finds they are " 'internally inconsistent, impeached by evidence of a prior inconsistent statement, rest on improper inferences, or are otherwise unsupportable.' " *Id.*, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595. Our own scope of review is confined to deciding if the trial court abused its discretion. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751. However, trial and appellate courts do have full or plenary power to consider questions of law. *Lewis v. Ohio Real Estate Comm.* (1997), 121 Ohio App.3d 23, 28, 698 N.E.2d 1023, 1026; *VFW Post 8586*, 83 Ohio St.3d at 82, 697 N.E.2d at 658–659.

■■■ In *B & N Ent., Inc. v. Liquor Control Comm.* (1999), 131 Ohio App.3d 394, 722 N.E.2d 599, the Tenth District considered a situation quite similar to the present one. Specifically, in *B & N Ent.*, the permit holder did not appear for the hearing, and the OLCC accepted the investigator's unsworn report without considering any other evidence. The Tenth District held that this type of

summary proceeding did not comply with the hearing requirement imposed on OLCC by R.C. 4301.04(B). Citing its previous decision in *Goldman v. State Med. Bd. of Ohio* (1996), 110 Ohio App.3d 124, 673 N.E.2d 677, the court held that the following requirements should apply:

" 'The procedural safeguards which would make any hearing meaningful may not require a full adversarial and evidentiary proceeding, but some sort of reliable evidentiary review, including the sworn testimony of the investigator, as well as a more considered review of the circumstances of the case, would be needed to fulfill the requirements for a hearing * * *.' A hearing may not fall 'to the level of a simple opportunity for a hearing which may be omitted entirely if the [appellant] waives his right to appear.' " *B & N Ent.* at 397–398, 722 N.E.2d at 601–602, quoting *Goldman*, 110 Ohio App.3d at 128–129, 673 N.E.2d at 680.

Accordingly, because the OLCC had relied only on the investigator's unsworn report, the Tenth District found that the OLCC decision was not supported by reliable, substantial, and probative evidence. *Id.*, 131 Ohio App.3d at 398, 722 N.E.2d at 602.

The Tenth District's comments about procedural safeguards are pertinent in view of the record in the present case. As we mentioned, the hearing was brief to the point of being virtually nonexistent. Presumably, the OLCC did rely on the investigator's report, as the Attorney General had asked the commission during the "three minute hearing" to find a violation based on the facts in the report. However, without even indicating that the investigator's report had been considered, or, in fact, that any evidence or documents had been reviewed, the OLCC chairman rejected the tavern's submission as "hearsay" and simply said, "Find in violation."

■ Even if OLCC did review the investigator's report and other documents, we agree with the Tenth District that this type of hearing is inadequate. We also stress that our review of this issue is plenary. As the court in *Goldman* noted, when we evaluate the nature and sufficiency of hearings, we do not substitute our judgment for that of the commission. Instead, the question of procedural requirements for hearings is one of law. *Id.*, 110 Ohio App.3d at 128, 673 N.E.2d at 679–680.

Based on the preceding discussion, the first assignment of error is sustained and the decision of the trial court is reversed.

## II

■ In the second assignment of error, the tavern contends that the trial court's decision should be reversed because Rule 52 is unconstitutionally over-

broad under Section 11, Article I of the Ohio Constitution and the First and Fourteenth Amendments to the United States Constitution. We recently addressed this issue in detail in a case involving the same parties, but based on an earlier violation of Rule 52. See *Dayton Tavern, Inc. v. Ohio Liquor Control Comm.* (Aug. 27, 1999), Montgomery App. No. 17651, unreported, 1999 WL 941826. Significantly, in that case, we found Rule 52 facially overbroad in violation of the First Amendment and Section 11, Article I of the Ohio Constitution. *Id.* at 14. In light of our prior decision on this point, the second assignment of error is sustained.

Based on the above discussion, the judgment of the trial court is reversed. The order of the Ohio Liquor Control Commission is also reversed and vacated, and judgment is entered in favor of Dayton Tavern, Inc.

*Judgment reversed.*

WOLFF and FAIN, JJ., concur.