**S & P LEBOS, INC., d.b.a. Le Bos, Appellant,**

v.

**OHIO LIQUOR CONTROL COMMISSION, Appellee.**

[Cite as *S & P Lebos, Inc. v. Ohio Liquor Control Comm.,*
163 Ohio App.3d 803, 2005-Ohio-4552.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–174.

Decided Aug. 30, 2005.

804

Jones Law Offices and Robyn R. Jones, for appellant.

Jim Petro, Attorney General, and William J. Cole, for appellee.

TRAVIS, Judge.

{¶ 1} This is an appeal pursuant to R.C. 119.12 from a judgment of the Franklin County Court of Common Pleas entered on January 21, 2005. The appeal involves a liquor permit issued to appellant, S & P Lebos, Inc., by the Ohio Department of Commerce, Division of Liquor Control. The Ohio Liquor Control Commission revoked appellant's license after finding that appellant violated Ohio Adm.Code 4301:1–1–52. This is the second time that this case has been before us.

{¶ 2} The history of this case began on the evening of February 8, 2002, when state liquor agents and members of the Cleveland Police Department entered Le Bos, liquor-permit premises located at 11139–43 Superior Avenue, Cleveland, Ohio, and owned by appellant, S & P Lebos, Inc. The police officers

were authorized to enter and search the bar pursuant to a warrant. All patrons and employees were ordered to stand along the walls of the bar, where the police officers conducted pat-down searches "for officer safety." One of those present at the bar, Floyd Cook, was found to have a firearm in his waistband. Cook was arrested for having a firearm in liquor-permit premises. Several other patrons were arrested for possessing controlled substances.[1] Cook was identified in the liquor investigator's report as "the DJ." Liquor agents issued a citation that charged that the permit holder had allowed improper conduct to take place by allowing an agent or employee of the permit holder to possess a firearm on the premises of a holder of a "D" liquor permit.[2]

{¶ 3} On May 31, 2002, a notice of hearing on the charge was mailed to the permit holder, S & P Lebos, Inc., at the permit address, 11139–43 Superior Avenue, Cleveland, Ohio, 44106. A person named Patricia Rine signed for the notice of hearing at that location on June 2, 2002.

{¶ 4} Attorney Theodore F. Stebbins of Cleveland, Ohio, was retained to represent the permit holder before the Liquor Control Commission. On June 11, 2002, Stebbins requested and was granted a continuance of the hearing from June 18 until September 24, 2002. Notice of the new hearing was sent by certified mail to the permit holder at the permit address. Patricia Rine also signed a second, undated return-receipt card. A third return-receipt card, dated June 17, 2002, was signed "Lloyd."

{¶ 5} Stebbins died unexpectedly on September 17, 2002. On September 23, 2002, Stebbins's brother, David C. Stebbins, an attorney in Columbus, Ohio,

---

1. Nothing in the record indicates a basis for the police officers to believe that any of the occupants were armed and dangerous. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Nothing in the record suggests any basis for the police officers to believe that controlled substances found on patrons during the mass pat-down search were weapons. Compare *Ybarra v. Illinois* (1980), 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238; *State v. Kinney* (1998), 83 Ohio St.3d 85, 698 N.E.2d 49, syllabus. The owner of a liquor establishment does not surrender all Fourth Amendment protections simply because the business is licensed by the state. *State v. VFW Post 3562* (1988), 37 Ohio St.3d 310, 525 N.E.2d 773. However, a permit holder has no standing to vicariously raise possible violations of the constitutional rights of patrons. Appellant did not raise any Fourth Amendment claims in the trial court, and we have no occasion to address any issues that might have been raised. Moreover, the liquor agents based the citation not upon a patron's possession of controlled substances, but on possession of a firearm by an agent or employee of the permit holder.

2. The notice of hearing states: *"Violation # 1:* On or about February 8, 2002, you and/or your agent and/or employees BOBBIE L. JOHNSON and/or FLOYD COOK and/or your unidentified agent and/or employee, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct, in that you and/or your agent and/or employees BOBBIE L. JOHNSON and/or FLOYD COOK, did allow illegal possession of firearm on your permit premises in violation of 4301:1–1–52, a regulation of the Ohio Liquor Control Commission." (Emphasis sic.)

wrote to the commission, advised the commission of his brother's death, and asked that the hearing be continued until new counsel could be obtained. The liquor commission did not receive the request until after the hearing was held.

{¶ 6} On September 24, 2002, the case was called before the Liquor Control Commission. A person who identified herself as Erma L. Hammett appeared. The following colloquy took place between Hammett, Assistant Attorney General DeFrank, commission members, and a person identified as Mr. Raber.

Mr. DeFrank: Are you the Permit Holder?

Ms. Hammett: Yes, I am.

Mr. DeFrank: Department would move to admit Exhibit A, the notice of hearing to show the charges, Exhibit B, the postal return card, Exhibit C, the Investigator's report.

And it's my understanding that you wish to admit to the charges today?

Ms. Hammett: Yes. And I am the Permit Holder, but I'm not the owner of the bar at the time. There were reasons—

Mr. DeFrank: Well, if you are the Permit Holder, you can make a statement in a minute.

Ms. Hammett: Okay.

Vice–Chairman Howard: Is there an admission of the charges?

Mr. DeFrank: Yes.

You did say you admitted the charges, correct?

Ms. Hammett: Yes.

Chairman Edwards: Anything you want to say?

Thereupon, Hammett advised the commission that she was in the process of selling the permit premises to another person, but the permit had not yet been transferred to the buyer. Hammett was sworn as a witness, and the transcript resumes with questions by a person identified only as Mr. Raber:

Q. [Raber]: You had a conversation with me—

A. [Hammett]: Yes.

Q. [Raber]: —before the hearing, discussing this case.

A. [Hammett]: Yes.

Q. [Raber]: What did you tell me that you wanted the Commission to do with this license?

A. [Hammett]: Revoke.

Chairman Edwards: Okay. If you would have told us that outright and to the point.

Okay. And you don't want that appealed either, I take it?

Ms. Hammett: No.

Chairman Edwards: You want that immediately taken care of?

Ms. Hammett: Yes.

Chairman Edwards: Okay. We might even have—I don't know if anybody is here from Cleveland, to be able to deliver that today, I don't—it's amazing how fast things can move when everybody is on the same page.

Ms. Hammett: Thank you.

Chairman Edwards: You're welcome.

Do you want anybody to appeal this revocation?

Ms. Hammett: No.

{¶ 7} Based on the foregoing, the commission revoked the permit issued to S & P Lebos, Inc., appellant herein. The revocation order was mailed to Hammett at 3401 Silsby Road, Cleveland Heights, Ohio 44118 on September 24, 2002, and received by her on September 27, 2002. There is no indication that a copy was mailed to the permit premises. However, on October 10, 2002, appellant filed a timely notice of appeal under R.C. 119.12.

{¶ 8} Upon appeal, the court of common pleas reversed the order of the commission. Relying upon *Union Sav. Assn. v. Home Owners Aid, Inc.* (1970), 23 Ohio St.2d 60, 52 O.O.2d 329, 262 N.E.2d 558, the court reasoned that because Hammett was not a licensed attorney, she could not appear before the commission on behalf of the corporate permit holder, S & P Lebos, Inc., and her admissions and testimony before the commission were incompetent evidence. Because on its face the commission order was based solely upon Hammett's admission of the charge, the common pleas court found that the order was not supported by reliable, probative, and substantial evidence and was not in accordance with law.

{¶ 9} The commission appealed and raised the following two assignments of error: (1) that the common pleas court incorrectly interpreted *Union Sav.* and (2) that the common pleas court erred in finding that the order of the agency was not supported by reliable, probative, and substantial evidence and was not in accordance with law.

{¶ 10} On March 30, 2004, we sustained both assignments of error. See *S & P Lebos, Inc. v. Ohio Liquor Control Comm.*, Franklin App. No. 03AP–447, 2004-Ohio-1613, 2004 WL 625693. We found that under the facts of this case, Hammett was not engaged in the practice of law when she appeared before the Liquor Control Commission.[3] Because Hammett was not practicing law, neither

_____

3. See decision at ¶ 18–19.

*Union Sav.* nor R.C. 119.13 prohibited the commission from considering her statements.[4]

{¶ 11} We went on to hold that under R.C. 119.12, the common pleas court was required to determine whether Hammett's statements were reliable, that is, believable, were probative in character, and were of substance.[5] We noted at ¶ 21 of our decision that R.C. 119.09 does not require an administrative agency to provide an explanation of its decision. A common pleas court may not presume that an agency limits the reasons for its action to those stated in an order. Instead, in an appeal under R.C. 119.12, the common pleas court must review the entire record to determine if the order is supported by reliable, probative, and substantial evidence and is in accordance with law. Therefore, we reversed the judgment and remanded the cause to the common pleas court with instructions to consider the entire record, including Hammett's statements, while applying the proper standard of review under R.C. 119.12.

{¶ 12} Upon remand, the common pleas court declined to address the following two arguments raised by appellant: (1) that revocation of the permit was an excessive punishment in violation of the Eighth Amendment and (2) that there was no evidence that Floyd Cook, referred to in the investigator's reports as the "DJ," was an agent or employee of the permit holder. The common pleas court found that appellant, Lebos, had waived both arguments by failing to raise them before the agency, or in the first appeal to the common pleas court, or in the first appeal before this court.[6]

{¶ 13} Relying upon the syllabus of *Dept. of Liquor Control v. Santucci* (1969), 17 Ohio St.2d 69, 46 O.O.2d 402, 246 N.E.2d 549, the common pleas court held that because Hammett testified that she was the permit holder, admitted the violation, and asked that the commission revoke the permit, no other evidence

---

4. R.C. 119.13 provides that in any hearing conducted under R.C. 119.01 to 119.13, a party or affected person may be represented by an attorney or by such other representative as is lawfully permitted to practice before the agency in question. Except for hearings before the State Personnel Board of Review, only an attorney at law may represent a party or affected person at a hearing at which a record is taken that may be the basis for an appeal to court.

5. In the trial court decision rendered on April 14, 2003, after finding that Hammett's admissions were incompetent evidence, the trial court expressly declined to examine the record for other evidence that might support the alleged violation. The court declined to review the record because on its face, the commission order was based solely on Hammett's admission of the violation.

6. We have reviewed the brief of S & P Lebos, filed in the original appeal, case No. 03AP–447. Lebos did not raise any claim of error regarding the harshness of the sanction imposed, nor did Lebos take issue with the admissibility of the investigator's report or whether there was sufficient evidence to find that Floyd Cook was acting as an agent or employee of the permit holder at the time.

was required to support the order of the agency. Although no other evidence was required, the court also noted that the investigator's report was admitted into evidence before the commission without objection. The court concluded that the order was supported by reliable, probative, and substantial evidence and was in accordance with law. The judgment of the common pleas court was journalized on January 21, 2005, and the permit holder filed a timely appeal to this court.

{¶ 14} In this second appeal, appellant raises the following assignment of error:

The order of the Liquor Control Commission to revoke the permit holder's license is not supported by reliable, probative and substantial evidence and is not in accordance with law.

{¶ 15} Relying upon *Steelton Village Mkt., Inc. v. Liquor Control Comm.,* Franklin App. No. 03AP–920, 2004-Ohio-5260, 2004 WL 2803435, appellant reasons that because Hammett was not an attorney, she could not speak on behalf of the corporate permit holder. Because she could not speak on behalf of the corporation, she was not authorized to admit the violation. Absent the admissions made by Hammett, the order of the commission was not supported by reliable, probative, and substantial evidence. Additionally, relying upon language in *Steelton,* appellant argues that the investigator's report should not have been admitted into evidence before the commission.

{¶ 16} In *Steelton,* an appeal under R.C. 119.12, the common pleas court applied *Union Sav.,* and held that a nonattorney could not appear before the Liquor Control Commission on behalf of a corporate permit holder. A majority of the panel of this court found that the trial court had correctly applied *Union Sav. Steelton,* 2004-Ohio-5260, ¶ 14. The full panel also held that the commission should not have considered an investigator's report that was neither sworn nor authenticated. Id. at ¶ 13. Finally, the panel found that the record was silent as to whether the person who appeared before the commission was authorized by the corporate permit holder to admit the violation charged. Id. at ¶ 14.[7]

{¶ 17} Appellant urges us to apply the majority view of the divided panel in *Steelton.* Appellee urges us to apply the dissenting opinion in *Steelton* and our decision in *Lindner v. Ohio Liquor Control Comm.* (May 31, 2001), Franklin App. No. 00AP–1430, 2001 WL 579808. However, resolution of the apparent disparity between these cases must await another day.

{¶ 18} In the first appeal in this case, we addressed the issue of whether a nonattorney may appear before the Liquor Control Commission on behalf of a corporate permit holder. We specifically held that Hammett's appearance before

---

7. The Liquor Control Commission appealed the holding of the divided panel. However, on May 20, 2005, the appeal was dismissed on motion of the commission. *Steelton Village Mkt., Inc. v. Liquor Control Comm.,* 105 Ohio St.3d 1556, 2005-Ohio-2424, 828 N.E.2d 112.

the commission did not amount to the practice of law. We found that the trial court had misapplied *Union Sav.* and had not conducted a full review of the record as required by R.C. 119.12. See *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. No appeal was taken from that judgment. Therefore, because the judgment of this court was not overturned on appeal, it became the law of the case.

{¶ 19} Under the doctrine known as the law of the case, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. This court having found that Hammett's actions before the board did not amount to the unauthorized practice of law, the law-of-the-case doctrine precludes relitigation of that issue either in the trial court upon remand or in this court in this second appeal following remand. Therefore, the holding in this case stands: Hammett was not practicing law when she appeared before the commission.

{¶ 20} In an appeal under R.C. 119.12, where some reliable, probative, and substantial evidence supports the order of the administrative agency and the order is in accordance with law, a reviewing court may not substitute its judgment for that of the agency, but instead must affirm. *T. Marzetti Co. v. Doyle* (1987), 37 Ohio App.3d 25, at 29, 523 N.E.2d 347. Therefore, in our remand, the common pleas court was instructed to review the entire record using the proper standard of review in an appeal under R.C. 119.12.

{¶ 21} In conformity with our instruction, the common pleas court reviewed the entire record on appeal. The court found that Hammett had identified herself as the holder of the liquor permit, admitted the violation, and asked that the permit be revoked. The common pleas court found that Hammett's admissions were reliable, probative of the issue, and of substance. The court further noted that the investigator's report was before the commission. The court concluded that the order of the commission was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 22} Under R.C. 119.12, appellate-court review of a common pleas court's judgment on the question whether an order of an agency is or is not supported by reliable, probative, and substantial evidence is limited. We review to determine whether the judgment of the common pleas court on that evidentiary question is an abuse of the court's discretion.

{¶ 23} With that standard in mind, the record demonstrates that Hammett

stated that she was the permit holder.[8]  Notice of the hearing on the alleged violation was sent to the permit holder at the permit address.  Proof that the notice of hearing was received at the permit address was before the commission.  No other person appeared at the hearing before the commission to contest Hammett's authority to speak on behalf of the permit holder.[9]  Therefore, there was "some" evidence to support the commission's order.

{¶ 24} It was the function of the common pleas court to determine whether that evidence was reliable, probative, and substantial.  The court found that the evidence met that test.  From the state of the record on appeal, we cannot say that the common pleas court abused its discretion in making that finding.

{¶ 25} In addition to finding that Hammett's admission of the charge provided evidence to support the order of the commission, the trial court also considered the report of the liquor investigator.  The unsworn, unauthenticated report provides little detail about the relationship between Floyd Cook and the permit holder.  The report simply states that Floyd Cook was the "DJ."  We assume that the investigator's shorthand use of "DJ" stands for "disc jockey," a person who plays recorded music on radio or television or at dance halls or parties.[10]

{¶ 26} A diagram of the permit premises was attached to the report.  The diagram shows the location of (1) the entrance to the permit premises, (2) the back bar, (3) the bar, (4) the patron areas, (5) the rest rooms, and (6) a space marked "D.J. Booth."  It is not unreasonable to infer that Floyd Cook, referred to as "the DJ," was engaged by the permit holder to play recorded music during business hours, thereby acting as the agent or employee of the permit holder.  If the investigator's report properly were considered, the report would provide "some" evidence to support the order of the commission.

{¶ 27} In *Goldman v. State Med. Bd. of Ohio* (1996), 110 Ohio App.3d 124, 673 N.E.2d 677, we held that due process of law and R.C. 4731.22 require more than

---

8.  Clearly, Hammett is not the permit holder.  The permit was issued to S & P Lebos, Inc., a corporation, not to Hammett.

9.  It is reasonable to conclude that if someone other than Hammett had been authorized to speak on behalf of the permit holder, that person would have appeared before the commission.  If Hammett was not authorized to appear on behalf of the corporate permit holder, or if the permit holder felt that Stebbins's death deprived the permit holder of a meaningful opportunity to appear and defend the allegation, an application to reconsider or to rehear the alleged violation could have been made.  No application to rehear or reconsider was made.

10.  The Merriam–Webster Dictionary defines "disc jockey" as "an announcer of a radio show of popular recorded music; also: one who plays recorded music for dancing at a nightclub or party."  The Encyclopedia Britannica defines "disc jockey" as a "person who conducts a program of recorded music on radio, on television, or at discotheques or other dance halls."

an unsworn, unauthenticated, preliminary investigative report to support an order of the administrative agency:

> From a due process standpoint, something more than reliance on the preliminary investigative reports of the agency must be considered by the board before a license may be revoked such as in this case. The procedural safeguards which would make any hearing meaningful may not require a full adversarial and evidentiary proceeding, but some sort of reliable evidentiary review, including the sworn testimony of the investigator, as well as a more considered review of the circumstances of the case, would be needed to fulfill the requirement for a hearing under R.C. 4731.22.

Id. at 129, 673 N.E.2d 677.

▆▆▆▆ {¶ 28} We followed and applied *Goldman* in *B & N Ent., Inc. v. Ohio Liquor Control Comm.* (1999), 131 Ohio App.3d 394, 398, 722 N.E.2d 599. In that case, we stated:

> More is required of the commission than simply providing an opportunity for a hearing. The same requirements we found to be lacking in *Goldman* should also apply to the hearing before the [liquor control] commission in this case. Pursuant to R.C. 4301.04(B), the commission "shall accord a hearing to any person appealing or complained against." Under *Goldman,* such a hearing must include more than only an unsworn investigative report of the agent that issued the violation in question. In this case, the commission simply accepted the unsworn report of the agent without considering any other evidence. We, therefore, conclude that the commission's decision suspending appellant's liquor permit was not supported by reliable, substantial and probative evidence.

{¶ 29} Nothing in the intervening years has changed our view of the minimum requirements necessary for a proper hearing before an administrative agency.[11] Minimum standards of due process and R.C. 4301.04(B) require more than reliance upon an unsworn, preliminary report of the person who issued the citation. *B & N Ent.,* supra. A hearing must be meaningful and incorporate appropriate procedural safeguards. *Dayton Tavern, Inc. v. Ohio Liquor Control Comm.* (1999), 134 Ohio App.3d 816, 732 N.E.2d 465. The Liquor Control Commission may not base its decisions upon unsworn, unauthenticated, preliminary reports of an investigator. *B & N Ent.* In this case, the investigator's unsworn, unauthenticated report does not provide reliable, probative, and substantial evidence as required by R.C. 119.12 and should not have been considered by the commission.

---

**11.** We continue to apply the *Goldman* and *B & N Ent.* cases to appeals under R.C. 119.12. See, e.g., *1800 Riverhouse, Inc. v. Ohio Liquor Control Comm.,* Franklin App. No. 03AP–732, 2004-Ohio-3831, 2004 WL 1607054.

{¶ 30} However, the erroneous reliance upon the investigator's report does not require reversal as long as there is other reliable, probative, and substantial evidence to support the commission's order. As discussed above, the common pleas court did not abuse its discretion in finding that Hammett's admissions met the test for reliable, probative, and substantial evidence.

{¶ 31} Because that evidentiary finding was within the discretion of the common pleas court, the first prong of the review required under R.C. 119.12 was met. We exercise plenary review on the second prong of the test—whether the order of the administrative agency was in accordance with law.

{¶ 32} Pursuant to R.C. 4301.25(A), the Liquor Control Commission is authorized to suspend or revoke a license issued pursuant to R.C. Chapters 4301 and 4303 for the violation of any applicable restrictions contained in those chapters or for the violation of any lawful rule promulgated by the commission. In addition, R.C. 4301.25(A) permits suspension or revocation "for other sufficient cause" and for specifically listed causes.[12]

{¶ 33} The additional causes for which the commission may suspend or revoke a license are set forth in R.C. 4301.25(A)(1) through (6). They include (1) conviction of the permit holder or agent or employee for a violation of R.C. Chapter 4301, 4303, or for a felony, (2) entry of judgment that the premises constitute a nuisance, (3) making a false material statement in an application for a permit, (4) assigning or transferring a permit contrary to the rules of the commission, (5) sale of alcoholic beverages to a retail or wholesale dealer that does not have a proper permit, and (6) failure to pay excise tax. A permit must be revoked upon conviction of a permit holder for violation of R.C. 2913.46(C)(1), sale of foods stamps or other food benefits.

{¶ 34} This case does not involve a violation of any of the provisions of R.C. Chapters 4301 or 4303 or of any of the specifically enumerated statutory causes set out in R.C. 4301.25(A)(1) through (6).[13] Instead, the Department of Public Safety chose to charge appellant with a violation of Ohio Adm.Code 4301:1–1–52, a regulation of the Liquor Control Commission. Appellant was charged with allowing or permitting "improper conduct" to take place on the permit premises in violation Ohio Adm.Code 4301:1–1–52, in that the permit holder knowingly or

---

12. The phrase "other sufficient cause" has been held to be uncertain of meaning, vague, and indefinite in violation of the Due Process Clause. *Chicone v. Liquor Control Comm.* (1969), 20 Ohio App.2d 43, 49 O.O.2d 64, 251 N.E.2d 864.

13. Floyd Cook may have been charged with possession of firearm on "D" liquor-permit premises, R.C. 2923.121(A), a felony of the fifth degree, but there is no evidence that he was ever convicted of that felony offense.

willfully allowed an agent or employee of the permit holder to possess a firearm upon the permit premises.

{¶ 35} There is no challenge to the lawfulness of the regulation itself. As originally adopted by the Liquor Control Commission, Regulation LCc–1–52 contained a broad proscription against permitting "improper conduct" on permit premises. LCc–1–52 provided as follows:

No permit holder, his agent, or employee shall knowingly or willfully allow in, upon or about his licensed premises improper conduct of any kind, type or character.

That broad prohibition was upheld against constitutional challenges based upon vagueness. See *Salem v. Liquor Control Comm.* (1973), 34 Ohio St.2d 244, 245, 63 O.O.2d 387, 298 N.E.2d 138.

{¶ 36} Additionally, under LCc–1–52, that broad, general prohibition against "improper conduct" was held to encompass the illegal possession of a sawed-off shotgun on permit premises. See *Lee v. Liquor Control Comm.* (Aug. 3, 1978), Cuyahoga App. No. 37548, 1978 WL 218091, interpreting LCc–1–52 as it then existed. In that case, the court stated:

The knowing possession of a sawed off shotgun is prohibited by a criminal statute, R.C. 2923.17, unless excepted by specific provisions not suggested by the appellant. It may not seriously be contended that the possession of such a weapon does not come within a reasonable interpretation of "improper conduct."

(Footnotes omitted.)

{¶ 37} Since *Lee* was decided, amendments to Regulation 52 appear to have narrowed its focus. Ohio Adm.Code 4301:1–1–52 is entitled "Entertainment—prohibition against improper conduct." After defining "disorderly activities" and "nudity," current Ohio Adm.Code 4301:1–1–52 addresses conduct prohibited by the regulation:

(B) Prohibited activities; no permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:

(1) Engage in any disorderly activities;

(2) Appear in a state of nudity;

(3) Engage in sexual activity as said term is defined in ORC Chapter 2907;

(4) Commit Public Indecency, as said term is defined in ORC Chapter 2907;

(5) Allow in, upon or about the licensed permit premises, or engage in or facilitate in, the possession, use, manufacture, transfer, or sale of any dangerous drug * * * as said terms are defined in ORC Chapter 2925;

(6) Solicit for value, or possess, buy, sell, use, alter or transfer * * * USDA food stamp coupons, Electronic Benefit Transfer (EBT) cards, WIC program benefit vouchers * * * in a manner not specifically authorized by the Food Stamp Act of 1977 * * *;

(7) Obtain or exert control over property or services of another * * * [including theft and receiving-stolen-property offenses].

{¶ 38} The facts of this case do not involve nudity, sexual activity, public indecency, sale or use of controlled substances, illegal trafficking in food stamps, or theft offenses. By process of elimination, the only prohibited activity that remains under Ohio Adm.Code 4301:1–1–52 is "disorderly activities."

{¶ 39} Ohio Adm.Code 4301:1–1–52(A)(1) defines "disorderly activities." " 'Disorderly activities' are those that harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls or any violation as defined by the Ohio Revised Code section 2917.11."

{¶ 40} On its face, Ohio Adm.Code 4301:1–1–52 does not apply to the facts of this case. Accepting for purpose of discussion that Floyd Cook was an agent or employee of the permit holder and that the permit holder knowingly allowed him to possess a firearm upon the permit premises, nothing in that conduct is prescribed by the current version of Ohio Adm.Code 4301:1–1–52. There is no evidence that Floyd Cook harassed, threatened, or physically harmed another person, or made threats or behaved in a menacing fashion. There is no evidence that Floyd Cook engaged in fighting, assaults, brawls, or any violation of the disorderly-conduct statute, R.C. 2917.11. In short, the sole evidence that can be gleaned from this record is that Floyd Cook possessed a firearm in the permit holder's "D" permit premises. That conduct does not fit the definition of "disorderly activities."

{¶ 41} Of course, there is a criminal prohibition against possessing a firearm on the premises of a "D" permit holder. See R.C. 2923.121. Had Floyd Cook been convicted of the felony of possessing a firearm while on liquor-permit premises, we would have both a different charge and a different result. However, there is no evidence in the record that Floyd Cook was ever convicted of a felony, and in any event, the charge against the permit holder was not brought under R.C. 4301.25(A)(1).

{¶ 42} One cannot lawfully be subject to punishment when there has been no offense committed. Equally clear is that a license issued by the state may not be revoked without a lawful reason. As written, Ohio Adm.Code 4301:1–1–52 does not prohibit the possession of a firearm on liquor-permit premises. As written, Ohio Adm.Code 4301:1–1–52 is restricted to certain defined acts and occurrences. Because the conduct of Floyd Cook did not violate Ohio Adm.Code 4301:1–1–52,

Hammett's "admission" of the nonexistent violation does not provide a basis for revocation of the permit issued to S & P Lebos, Inc.[14]

{¶ 43} Because Ohio Adm.Code 4301:1–1–52 does not apply to the conduct alleged, revocation of appellant's liquor license is not in accordance with law. Hence, the judgment must be reversed.

{¶ 44} Additionally, we note that at oral argument, counsel for the Liquor Control Commission explained that persons who hold liquor licenses in their own names are permitted to appear and defend, with or without counsel, but that in the case of a permit held by a corporation, a nonattorney is permitted to speak on behalf of the corporation only in mitigation following an admission of the charge. If the charge is denied, the nonattorney is not permitted to speak or defend on behalf of a corporate permit holder. Only an attorney can appear on behalf of a corporate permit holder that denies the charge.

{¶ 45} To comport with the requirements of due process and the provisions of the Revised Code, where a liquor license is subject to suspension or revocation, the permit holder must be provided with notice of the date and time of the hearing and the nature of the allegations. The notice of hearing in this case advises the permit holder as follows:

You, [the permit holder], may be present at said time and place, with or without counsel, or you may present your position or contentions in writing, and at said hearing may present evidence and examine witnesses appearing for or against you.

{¶ 46} For individuals, the language of the notice of hearing is clear. The individual permit holder may appear with or without counsel and may defend against the charge. For those who have set up corporations to hold the liquor permit, the notice is misleading. Corporate permit holders are advised that they may appear and defend, but in reality, they are not permitted to defend unless they appear through counsel. Nevertheless, because appellant did not assign error based on due process concerns, resolution of that issue also must await another day.

---

**14.** Appellee does not address, nor do we chose to explore, whether the holder of a liquor permit may seek cancellation of a permit by the Liquor Control Commission or whether the proper course would be to make a request to voluntarily surrender the license to the Department of Commerce, Division of Liquor Control, which issued the license. One thing is certain, however, the Department of Commerce, Division of Liquor Control, is in a much better position to determine if the person requesting cancellation of a liquor license is actually the authorized permit holder. Applications for permits to be held in the name of a corporation require information about the corporate stockholders. It would be relatively simple for the Division of Liquor Control to compare a request for cancellation of a license with the information listed in the original or renewal applications to determine if the party asking for cancellation has the authority to do so.

{¶ 47} Because the order of the Liquor Control Commission is not in accordance with law, the judgment of the Franklin County Court of Common Pleas is reversed and this case is remanded to that court with instructions to reverse the order of the Liquor Control Commission.

Judgment reversed<br/>and cause remanded.

PETREE and FRENCH, JJ., concur.